IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRANSPORTATION SECURITY ADMINISTRATION, *et al.*, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action <br> **03 1846** <br><br> **FILED** <br><br> SEP - 4 2003 <br> NANCY MAYER WHITTINGTON, CLERK <br> U.S. DISTRICT COURT |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Electronic Privacy Information Center ("EPIC") respectfully submits this memorandum of points and authorities in support of its motion for a temporary restraining order ("TRO") and preliminary injunction.

### Preliminary Statement

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; and the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, seeking the expedited processing and release of agency records concerning the Computer Assisted Passenger Prescreening System ("CAPPS II"). The records at issue concern privacy issues surrounding the Transportation Security Administration's ("TSA") development of CAPPS II, a controversial initiative that has been the subject of substantial public interest for almost two years. The requested information fits squarely within the narrow category for which Congress mandated expedited processing, as it is directly relevant to a pending public comment period on CAPPS II privacy issues which closes on September 30, 2003.

In violation of the strict time limits mandated by the FOIA, defendant TSA has failed to respond within the requisite 10 days to plaintiff's request for expedited processing of the requested records. TSA's failure to act on plaintiff's request -- the effect of which is to deny plaintiff the expedition to which it is legally entitled -- is procedurally and substantively flawed.

Because time is at the essence of plaintiff's rights and defendant's obligations, plaintiff seeks the Court's expedited consideration of this matter and entry of an order compelling defendant to process and disclose the requested records immediately.

## Statement of Facts

### A. Privacy Issues and the CAPPS II System

On November 19, 2001, the President signed the Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71. The ATSA created defendant TSA within the Department of Transportation and, *inter alia*, transferred to defendant TSA the duties and responsibilities set forth in Chapter 449 of Title 49, United States Code, relating to civil aviation security. Those duties and responsibilities include "screening of all passengers." 49 U.S.C. § 44901 (2003).

On November 25, 2002, the President signed the Homeland Security Act ("HSA"), Pub. L. 107-296. The HSA created the Department of Homeland Security ("DHS") and, *inter alia*, transferred the functions of defendant TSA to DHS. 6 U.S.C. § 203 (2003).

As part of its responsibilities relating to the screening of airline passengers, defendant TSA has been engaged in the development of what it describes as "the next generation of the Computer Assisted Passenger Prescreening System (CAPPS II)." Questions concerning the privacy impact of CAPPS II have been raised since its inception, and TSA has sought to quell public concerns. In a press release titled "TSA's CAPPS II Gives Equal Weight to Privacy, Security," issued on March 11, 2003, TSA described CAPPS II as "an enhanced system to confirm the identities of passengers and to identify foreign terrorists or persons with terrorist connections before they can board an aircraft." TSA's administrator, Admiral James M. Loy, stated in the press release that TSA "will accomplish this without compromising the privacy and civil liberties enjoyed by every American," and that "[t]he privacy rights of all passengers will be honored."

2

In January 2003, defendant TSA published a Privacy Act Notice in the Federal Register announcing its intent to establish a system of records to support the development of CAPPS II. Privacy Act Notice, 68 Fed. Reg. 2101 (January 15, 2003). The public responded with "well over 200 comments," according to the TSA, which "generally expressed concern that the proposed CAPPS II system was too broad in scope and would prove invasive to passengers' privacy." Interim Final Privacy Act Notice, 68 Fed. Reg. 45265, 45267 (August 1, 2003). TSA accordingly made "significant changes" to its formulation of CAPPS II and published an Interim Final Privacy Act Notice on August 1, 2003. Public comments on that notice are due no later than September 30, 2003. *Id.* at 45265.

### B. Plaintiff's Request For Expedited FOIA Processing

On August 22, 2003, plaintiff wrote to TSA and requested under the FOIA two specific records that bear directly upon the privacy implications of CAPPS II. Plaintiff requested:

> any "Capital Asset Plan and Business Case" materials (Exhibit 300) submitted to the Office of Management and Budget; and
>
> any "Privacy Impact Assessments" prepared for the CAPPS II project.

Letter from David L. Sobel to Patricia Riep-Dice, August 22, 2003, at 1 (attached to Declaration of David L. Sobel ("Sobel Decl.") as Exhibit 1).[1]

Plaintiff requested expedited processing of its request and explained the urgency of disseminating information about CAPPS II to the public. Plaintiff's counsel stated:

---

[1] The existence of an Exhibit 300 and a Privacy Impact Assessment for the CAPPS II program is strongly suggested by a document TSA released to plaintiff on August 19, 2003, pursuant to an earlier FOIA request. That document -- the minutes from a "CAPPS II Privacy Issues Meeting" held on October 3, 2002 -- specifically references an Exhibit 300 and a Privacy Impact Assessment. Exhibit 2 (attached to Sobel Decl.). Plaintiff's earlier FOIA request is the subject of litigation pending before this Court. *Electronic Privacy Information Center v. Department of Homeland Security, et al.*, No. 03-CV-1255 (CKK).

> The government activity at issue here -- creating an airline passenger pre-screening system -- implicates serious privacy and security issues that have received considerable news media attention in recent months. TSA has previously recognized that EPIC's FOIA requests for information concerning CAPPS II warrant expedited processing, and I incorporate by reference herein the material I provided to your office in my letter of March 10, 2003, relating to the public interest in such information.

*Id.* at 2.[2] The earlier letter that plaintiff referenced noted, *inter alia*, that "[a] search in the Lexis–Nexis news database for articles on 'CAPPS II' for the past 15 days returns 41 results" and that Admiral Loy had stated in a press release that "CAPPS II is being designed to serve our national security without sacrificing individual privacy" and that "[c]oncerns about privacy are understandable." Letter from David L. Sobel to Patricia Riep-Dice, March 10, 2003, at 2-3 (attached to Sobel Decl. as Exhibit 4). Plaintiff also cited editorial comment questioning the system and criticizing TSA for not adequately informing the public of its plans. *Id.*

Plaintiff specifically noted the pendency of a public comment period on TSA's Interim Final Privacy Act Notice for CAPPS II and cited it as an additional basis for expedition:

> There is a particular urgency for the public to obtain information about the CAPPS II system. On August 1, 2003, the TSA published a Privacy Act notice in the Federal Register concerning the CAPPS II initiative, 68 Fed. Reg. 45265. Public comments on that notice are due by September 30 and the public will benefit from having access to the requested records before the expiration of the comment period.

Exhibit 1 at 2.

In support of its assertion that it is "primarily engaged in disseminating information" within the meaning of the FOIA and DHS regulations, plaintiff addressed its news collection and dissemination activities:

---

[2] As plaintiff noted in its request letter of August 22, 2003, TSA had granted plaintiff's earlier request for expedited processing in response to the material it provided to the agency. E-mail from Patricia Riep-Dice to David L. Sobel, March 12, 2003 (attached to Sobel Decl. as Exhibit 3).

4

> EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public. This is accomplished through several means. First, EPIC maintains a heavily visited Web site (www.epic.org) that highlights the "latest news" concerning privacy and civil liberties issues. The site also features scanned images of documents EPIC obtains under the FOIA. Second, EPIC publishes a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets. The newsletter reports on relevant policy developments of a timely nature (hence the bi-weekly publication schedule). It has been published continuously since 1996, and an archive of past issues is available at our Web site. Finally, EPIC publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues. A list of EPIC publications is available at our Web site.

*Id.* at 2. Finally, plaintiff noted that "the U.S. District Court for the District of Columbia has held that EPIC is a 'news media' requester under the FOIA." *Id.* (citing *Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003)).

### C. Defendant TSA's Failure to Respond to Expedition Request

Nothwithstanding the statutory, 5 U.S.C. § 552(a)(6)(E)(ii), and regulatory, 6 CFR § 5.5(d)(4), time limit of ten calendar days, defendant TSA has not responded to plaintiff's request for expedited processing of its FOIA request. In its request letter, plaintiff's counsel wrote, "[a]s applicable Department regulations provide, I will anticipate your determination on our request for expedited processing within ten (10) calendar days." Exhibit 1 at 3. By letter dated August 22, 2003, defendant TSA acknowledged receipt of plaintiff's FOIA request but did not address plaintiff's explicit request for expedited processing. Letter from Patricia Riep-Dice to David L. Sobel, August 22, 2003 (attached to Sobel Decl. as Exhibit 5).

### ARGUMENT

The issues in this case are simple and not subject to serious dispute. In compliance with the FOIA and the DHS regulations that govern defendant TSA's FOIA processing, plaintiff requested expedited processing of a request seeking information concerning privacy issues

5

surrounding the TSA's development of CAPPS II. In support of its request, plaintiff submitted extensive information that clearly establishes its entitlement to expedited processing. In violation of both the letter and the spirit of the statutory and regulatory requirements for expedited processing, defendant has failed to respond to plaintiff's request for expedition. Defendant's failure to respond, and to grant the request, is clearly unlawful and should be restrained.

### I. <u>The Court has Jurisdiction to Grant the Requested Relief</u>

The Court's jurisdiction to consider this matter and grant appropriate relief is clear. The FOIA provides, in pertinent part:

> Agency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and *failure by an agency to respond in a timely manner to such a request* shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination.

5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added). The referenced judicial review provision states, in pertinent part:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B).

This Court also has jurisdiction of this case under 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States"), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 ("[a] person suffering legal wrong because of an agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof").

Plaintiff has exhausted the applicable administrative remedies. As the FOIA provides, "the court shall determine the matter *de novo*." 5 U.S.C. § 552(a)(4)(B); *see also Al-Fayed v. CIA*, 254 F.3d 300, 308 (D.C. Cir. 2001) ("a district court must review *de novo* an agency's denial of a request for expedition under FOIA").

## II. Plaintiff is Entitled to Entry of a Restraining Order

In considering plaintiff's request for the entry of a TRO compelling defendant to expedite the processing of plaintiff's FOIA request, the court must assess "[t]he familiar factors affecting the grant of preliminary injunctive relief -- 1) likelihood of success on the merits, 2) irreparable injury to the plaintiff, 3) burden on . . . others' interests, and 4) the public interest." *Jacksonville Port Authority v. Adams*, 556 F.2d 52, 57 (D.C. Cir. 1977) (citing *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958), and *A Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 (D.C. Cir. 1969)). Consideration of these factors here establishes plaintiff's entitlement to injunctive relief.

### A. Plaintiff's Likelihood of Success on the Merits

Given the clarity of the relevant statutory and regulatory mandates at issue in this case, and defendant TSA's failure to comply with them, plaintiff's likelihood of prevailing on the merits is extremely high. As the D.C. Circuit has held,

> it is elementary that an agency must adhere to its own rules and regulations. *Ad hoc* departures from those rules . . . cannot be sanctioned, for therein lies the seeds of destruction of the orderliness and predictability which are the hallmarks of lawful administrative action. Simply stated, rules are rules, and fidelity to the rules which have been properly promulgated, consistent with applicable statutory requirements, is required of those to whom Congress has entrusted the regulatory missions of modern life.

*Reuters Ltd. v. Federal Communications Commission*, 781 F.2d 946, 950-51 (D.C. Cir. 1986) (citation omitted). *See also Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 536 (D.C. Cir. 1986) (Scalia, J.) ("It is axiomatic that an agency must adhere to its own regulations . . .").

7

In assessing plaintiff's likelihood of prevailing, the Court must consider the merits of two discrete issues: whether defendant TSA has violated the mandatory time limit for responding to plaintiff's request for expedition; and whether plaintiff has satisfied the statutory and regulatory criteria for expedited processing. Plaintiff is likely to prevail on both issues.

1. **Violation of the Mandatory Time Limit**

The FOIA requires agencies to promulgate regulations providing that "a determination of whether to provide expedited processing *shall be made*, and notice of the determination *shall be provided* to the person making the request, *within 10 days after the date of the request.*" 5 U.S.C. § 552(a)(6)(E)(ii)(I) (emphasis added). In accordance with the statutory mandate, the DHS regulations, to which defendant TSA is subject, provide that "[w]ithin ten calendar days of its receipt of a request for expedited processing, the proper component shall decide whether to grant it and shall notify the requester of the decision." 6 CFR § 5.5 (d)(4).

Plaintiff's request was received by defendant TSA on August 22, 2003. Exhibit 4. Defendant TSA did not render a decision, nor notify plaintiff of a decision, within ten calendar days of receipt of plaintiff's request. Indeed, defendant TSA still has not done so. Plaintiff will prevail on this issue.

2. **Plaintiff's Entitlement to Expedited Processing**

In relevant part, 5 U.S.C. § 552(a)(6)(E)(i) provides that "[e]ach agency shall promulgate regulations . . . providing for expedited processing of requests for records . . . in cases in which the person requesting the records demonstrates a compelling need . . ." The statute provides that "compelling need" includes, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v).

Pursuant to that directive, DHS issued regulations providing that "requests . . . will be taken out of order and given expedited treatment whenever it is determined that they involve . . . [a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 6 CFR § 5.5(d)(1)(ii). Plaintiff provided defendant TSA with clear evidence of "compelling need" for expedited processing as required by the FOIA and DHS regulations.

### a. "Primarily Engaged in Disseminating Information"

Plaintiff meets the first test of entitlement to expedited processing of its FOIA request because it is "primarily engaged in disseminating information" within the meaning of the FOIA's "compelling need" provision and the DHS regulations. Indeed, this Court held earlier this year that EPIC qualifies as a "news media" requester under the FOIA. *See Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

As plaintiff informed TSA (and as this Court found), EPIC systematically disseminates information to the public. This is accomplished through several means. EPIC maintains a heavily visited Web site that highlights the "latest news" concerning privacy and civil liberty issues. The organization has published since 1996 a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets. EPIC also publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues. *See* Exhibit 1 at 2-3. Plaintiff's news collection and publication activities demonstrate that it is "primarily engaged in disseminating information."

9

### b. "**Urgency to Inform the Public**"

Plaintiff has also demonstrated beyond question that its FOIA request pertains to matters about which there is an "urgency to inform the public concerning actual or alleged federal government activity." The D.C. Circuit has held that

> in determining whether requestors have demonstrated "urgency to inform," and hence "compelling need," courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.

*Al-Fayed*, 254 F.3d at 311. All three factors are satisfied here.

First, plaintiff's request for information about the CAPPS II program clearly "concerns a matter of current exigency to the American public." CAPPS II implicates serious privacy and security issues that have received considerable news media attention in recent months. In its March 10, 2003, request letter (which plaintiff incorporated by reference in the request at issue here), plaintiff provided defendant TSA with search results from the Lexis-Nexis news database that contained 41 articles about CAPPS II published in a fifteen-day period proceeding the FOIA request. Exhibits 1 and 3. Plaintiff thus demonstrated that CAPPS II is a matter of current urgency to the American public. *See, e.g. Al-Fayed*, 254 F.3d at 311 (requester must show "substantial interest, either on the part of the American public or the media," evidenced by "news reports").

Second, the consequences of delaying a response will compromise the ability of plaintiff and the public at large to submit informed and meaningful comments to TSA's Interim Final Privacy Act Notice. Defendant has set a September 30 deadline for public comments responding to the Interim Final Privacy Act Notice on CAPPS II. 68 Fed. Reg. 45265. TSA acknowledges that it received over 200 responses to its initial notice on CAPPS II, and that those comments

"generally expressed concern that the proposed CAPPS II system was too broad in scope and would prove invasive to passengers' privacy." *Id.* at 45267. In response to those earlier comments, the agency asserts that it has significantly revised its plans for the system. *Id.* It is of utmost importance that the public have as much information about CAPPS II as possible to respond meaningfully and thoughtfully to defendant's proposed rule by September 30. The expedited processing of plaintiff's FOIA request will facilitate meaningful response to the Interim Final Rule because it will allow plaintiff to inform the public about any material obtained from defendant TSA before the comment period expires.[3] There can be no dispute that facilitating informed public participation in an agency comment process is a "significant recognized interest." Public comments on proposed agency action are among the mechanisms "which serve important purposes of agency accountability and reasoned decisionmaking." *American Medical Ass'n v. Reno*, 57 F.3d 1129, 1132 (D.C. Cir. 1995) (citations omitted). As such, agencies must "allow for meaningful and informed comment." *Id.*

Finally, plaintiff's request indisputably concerns Federal government activity. Defendant TSA is a government agency developing CAPPS II for passenger and aviation security purposes,

---

[3] The Office of Management and Budget requires any agency that seeks funding for a project to submit an exhibit 300. *See* OFFICE OF MANAGEMENT AND BUDGET, CIRCULAR NO. A-11, PART 7, PLANNING BUDGETING, ACQUISITION, AND MANAGEMENT OF CAPITAL ASSETS (2002). Such a submission requires an agency to assess, among other things, the project's security and privacy implications. *Id.* at 14. Additionally, the E-Government Act of 2002 requires all agencies to prepare a Privacy Impact Assessment before "developing or procuring information technology that collects, maintains, or disseminates information that is in identifiable form. E-Government Act of 2002, Pub. L. No. 107-347, § 208 (b)(1)(A)(i), 116 Stat. 2910 (codified at 44 U.S.C. § 3601). Such assessments must explain "what information is to be collected; why the information is being collected; the intended use of the agency information; with whom the information will be shared; what notice or opportunities for consent would be provided to individuals regarding what information is collected and how that information is shared; how the information will be secured; and whether a system of records is being created under . . . the Privacy Act." *Id.* at §§ 208(b)(2)(B)(ii)(I)-(VII).

11

as discussed in the initial Privacy Act Notice, 68 Fed. Reg. 2101, and the Interim Final Notice, 68 Fed. Reg. 45265.

Because plaintiff has demonstrated that it is "primarily engaged in disseminating information" and that an "urgency to inform the public" exists "concerning actual or alleged Federal Government activity," it is legally entitled to expedited processing of its FOIA request.

### B. Plaintiff Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief

Unless defendant TSA's unlawful failure to expedite the processing of its FOIA request is immediately enjoined, plaintiff will suffer irreparable harm.[4] The very nature of the right that plaintiff seeks to vindicate in this action -- expedited processing -- depends upon timeliness. The courts have recognized that preliminary injunctive relief is appropriate, and the requisite injury is present, in cases where "time is of the essence." *See, e.g., United States v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982). Under the statutory scheme Congress established in the FOIA (determinations in ten calendar days), it is clear that "time is of the essence" here and that any further delay in the processing of plaintiff's request will cause irreparable injury. Unless defendant TSA is ordered to process plaintiff's request immediately, plaintiff's right to expedition under the FOIA will be irretrievably lost.

---

[4] Given the strength of plaintiff's position on the merits, even "a relatively slight showing of irreparable injury" is adequate to justify the issuance of a TRO. As the D.C. Circuit has held,

> [i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak. An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury.

*CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (citation omitted). Nonetheless, plaintiff's showing of harm here is substantial.

12

In addition to the loss of its clearly established legal right, any further delay in the processing of plaintiff's FOIA request will irreparably harm plaintiff's ability (and that of the public) to engage in informed discussion and debate on the privacy and constitutional implications of TSA's controversial CAPPS II program. Public comments to the Final Interim Privacy Act Notice published by TSA must be submitted by September 30, 2003. 68 Fed. Reg. 45265, 45267. Without the expedited access to information about the CAPPS II program to which it is legally entitled, plaintiff's ability to engage in an urgent and current public policy debate will be irretrievably lost. *See* Sobel Decl. ¶¶ 11-13. As this Court recently noted, a private party (such as plaintiff) "suffers an injury-in-fact when . . . denied information that must be disclosed pursuant to statute." *Walker v. Cheney*, 230 F. Supp. 2d 51, 66 n.10 (D.D.C. 2002), citing *FEC v. Akins*, 524 U.S. 11, 21 (1998) and *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989).

Because time is of the essence in this matter, plaintiff will be irreparably harmed unless the Court acts now, "when it [is] still possible to grant effective relief," and before "all opportunity to grant the requested relief [is] foreclosed." *Local Lodge No. 1266, International Association of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th Cir. 1981).

### C. Injunctive Relief Will Not Burden Others' Interests

Defendant TSA cannot be said to be "burdened" by a requirement that it comply with the law. The immediate relief plaintiff seeks will require nothing more of TSA than what the law already mandates -- the expedited processing of plaintiff's FOIA request. Nor will the requested relief burden the interests of other parties who have submitted FOIA requests to defendant TSA in any manner beyond that foreseen by Congress. In providing for expedited processing of

13

qualifying requests, Congress intended that such requests would take precedence over those that do not qualify for such treatment. Fulfillment of the legislative intent cannot be characterized as a burden on any party's interests.

### D. The Public Interest Favors the Requested Relief

The final criterion for the issuance of a TRO is clearly satisfied in this case. The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Authority*, 556 F.2d at 59 (D.C. Cir. 1977). Such adherence is all that plaintiff seeks here. The public interest will also be served by the expedited release of the requested records, which will further the FOIA's core purpose of "shedding light on an agency's performance of its statutory duties." *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989). As this court has noted, "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities. *Center to Prevent Handgun Violence v. U.S. Department of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999). The public interest favors the issuance of an order directing defendants to expedite the release of the requested information.

### III. The Court Should Order Defendant TSA to Process Plaintiff's FOIA Request Immediately

The DHS regulations applicable to defendant TSA dictate the manner in which FOIA requests requiring expedition must be processed. The regulations provide that DHS components "ordinarily shall respond to requests according to their order of receipt," 6 CFR § 5.5(a), but that requests "will be taken out of order and given expedited treatment whenever it is determined that they [meet the criteria for expedited processing]." *Id.* § 5.5(d)(ii). "If a request for expedited

14

treatment is granted, the request shall be given priority and shall be processed as soon as practicable." *Id.* § 5.5(d)(4).

In assessing the practicability of processing plaintiff's request immediately, the Court should note the narrowness and specificity of the request. Plaintiff seeks disclosure of two documents relating to CAPPS II -- TSA's "Exhibit 300" submission to the Office of Management and Budget, and the Privacy Impact Assessment. Given the potential significance of these records to the pending public comment process, their immediate retrieval and review would not unduly burden TSA. Indeed, such priority processing is precisely what Congress mandated for material of the kind at issue here.

The Court should order TSA to take whatever steps are necessary to complete the processing of plaintiff's request prior to the September 30 expiration of the public comment period on the CAPPS II Interim Final Privacy Act notice.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a temporary restraining order and a preliminary injunction should be granted.

Respectfully submitted,

_____
DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

MARCIA HOFMANN
D.C. Bar admission pending

15

ELECTRONIC PRIVACY INFORMATION
    CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC  20009
(202) 483-1140

Counsel for Plaintiff

16