UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>   Plaintiff,<br><br>     v.<br><br>TRANSPORTATION SECURITY ADMINISTRATION, *et al.*,<br><br>   Defendants. | Civil Action No. 03-1846 (CKK) |

**MEMORANDUM OPINION**
(March 12, 2006)

Upon the initial round of dispositive motions in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Court granted-in-part and denied-in-part Defendants' Motion for Summary Judgment. Specifically, the Court found "that while Defendants properly concluded that the requested documents are covered by a Freedom of Information Act ("FOIA") exemption, Defendants' representations regarding the availability of reasonably segregable non-exempt information in these documents was deficient and that Defendants must revisit the segregability analysis." *See Elec. Privacy Info. Ctr. v. Transp. Sec. Admin.*, Civ. No. 03-1846, at 1 (D.D.C. Aug. 2, 2004) (memorandum and order granting-in-part and denying-in-part Defendants' initial motion for summary judgment). Following this Court's Order, Defendants completed their segregability analysis and provided to Plaintiff certain redacted documents at issue. *See* Defs.' Suppl. Mot. for Summ. J. at 3; Decl. of Catrina Pavlik ("Pavlik Decl.")[1] ¶ 5. Currently

---

[1] Declarant is the Associate Director of the Freedom of Information Act and Privacy Act Division of the Transportation Security Administration ("TSA") within the Department of Homeland Security ("DHS"). Pavlik Decl. ¶ 1.

pending before the Court are Defendants' Supplemental Motion for Summary Judgment, Plaintiff's Opposition, and Defendants' Reply. Upon a searching examination of these filings, the attached exhibits and declarations, the relevant case law, and the entire record herein, the Court shall grant Defendants' Supplemental Motion for Summary Judgment.

## I: BACKGROUND

Plaintiff is an organization that tracks issues relating to privacy and civil liberties. Compl. ¶ 3. Plaintiff initially filed a FOIA request with the Transportation Security Administration ("TSA") on August 22, 2003, seeking two types of documents related to the Computer Assisted Passenger Prescreening System ("CAPPS II"): any Capital Asset Plan and Business Case materials that TSA had submitted to the Office of Management and Budget ("OMB"), and any Privacy Impact Assessments[2] ("PIAs") that had been prepared for the CAPPS II project. *See* Defs.' Mot. for Summ. J.; Defs.' Decl. of Patricia M. Riep-Dice[3] ("Riep-Dice Decl."), Ex. A-2 (Copy of Plaintiff's FOIA Request). CAPPS II was intended to perform risk assessments of airline passengers and to authenticate their identities. Compl. ¶ 8. To accomplish this goal, CAPPS II was designed to

---

[2] Section 208 (B)(1)(a) of the E-Government Act of 2002, Pub. L. No. 107-347 (Dec. 17, 2002), which became effective on April 17, 2003, requires federal agencies to conduct a privacy impact assessment when developing or procuring information technology or initiating a new collection of information that is based on "information in an identifiable form." E-Government Act of 2002 § 208(B)(1)(a). The assessment must address what information is to be collected under the system, why the information is being collected, the intended use of the information, with whom the information will be shared, how individuals can consent to the use of their information, how the information will be secured, and whether a system of records is being created under the Privacy Act. *Id*. § 208 (B)(2)(b)(ii).

The E-Government Act also states that a federal agency "shall . . . if practicable, after completion of the review [by the agency's Chief Information Officer or equivalent official], make the privacy impact assessment publicly available through the website of the agency, publication in the Federal Register, or other means. *Id*. § 208 (B)(1)(b)(ii-iii).

[3] Declarant is the Associate Director of the Freedom of Information Act and Privacy Act Division of TSA within DHS.

authenticate the identities of, and conduct risk assessments on, airline passengers traveling to, from, or within the United States, in order to identify passengers who pose a threat to passenger or aviation security. *Id.*; *see also* Defs.' Suppl. Mot. for Summ. J. at 1.

Plaintiff subsequently filed the above-captioned action in this court on September 4, 2003. Named as Defendants were TSA and the Department of Homeland Security ("DHS"). Compl. at 1. Plaintiff moved for a temporary restraining order so that it could analyze the documents and prepare comments to meet the September 30, 2003, deadline for public comments that had been set by TSA in its August 1, 2003, Privacy Act notice for CAPPS II.[4] Pl.'s Mot. for TRO at 1. Subsequently, the parties reached an agreement that resulted in the withdrawal of that motion.

On October 9, 2003, Plaintiff amended its Complaint against TSA and DHS, and now seeks only the Privacy Impact Assessments relating to CAPPS II. Defs.' Stmt. of Mat. Facts ¶ 1. Defendants have searched the six offices that were likely to contain Privacy Impact Assessments relating to CAPPS II, and found five documents consisting of four versions of draft Privacy Impact Assessments. *Id*. ¶¶ 2-3. These four versions are dated November 7, 2002, April 17, 2003, July 29, 2003, and July 30, 2003. *Id.* (citing Defs.' Decl. of Barbara Huie[5] ("Huie Decl.") ¶ 9). The initial draft was prepared in the office of the Chief Information Officer in November 2002 while TSA was part of the Department of Transportation. *See* Huie Decl. ¶ 9. Shortly thereafter, the Office of National Risk Assessment ("ONRA") was created and program responsibility for the CAPPS II

---

[4] The Privacy Act of 1974, as amended, requires federal agencies to publish a notice in the Federal Register notifying the public about various aspects of each "systems of record" they maintain. 5 U.S.C. § 552a(e)(4). TSA published an "interim final" Privacy Act notice on August 1, 2003, for CAPPS II. Privacy Act Notice, 68 Fed. Reg. 45265 (Aug. 1, 2003).

[5] Declarant is the Privacy Officer and Director for Community and Stakeholder Issues for the Office of National Risk Assessment of TSA within DHS.

project was transferred to it.  ONRA drafted the following three versions after TSA became part of DHS.  *Id*.  While all ONRA versions have been shared within TSA and with DHS, the version dated April 17, 2003 was shared with OMB as part of a multi-tiered, on-going review and approval process in conjunction with the Fiscal Year 2005 budget deliberations.  *Id*. ¶ 10 & Ex. A-1.

On September 25, 2003, Defendant TSA responded to Plaintiff's FOIA request, stating that the draft Privacy Impact Assessments would not be provided to Plaintiff but instead would be withheld in full under Exemption 5 of FOIA, which permits agencies to withhold material that is predecisional and part of an agency's deliberative process.  Def.'s Stmt. of Mat. Facts ¶ 4; Riep-Dice Decl. Ex. A-4 (Copy of TSA's Response to Plaintiff's FOIA Request).  Pursuant to Exemption 5, Defendants maintained that the drafts are "predecisional" in that none has been finalized.  Huie Decl. ¶ 12; Riep-Dice Decl. ¶ 33; Riep-Dice Decl. Ex. A-1 at 1-3 (*Vaughn* Index: Documents Withheld in Response to FOIA Request).  Defendants also contended that the documents are "deliberative because they reflect the give-and-take of review, comment, pass-back, and revision," because they "do not represent the approved final agency decisions on the Privacy Impact Assessment or CAPPS II" and "because the underlying system is still evolving and no final decisions on the program's scope, use, architecture or application" had been made.  Defs.' Mot. for Summ. J. at 10; Riep-Dice Decl. ¶ 33; *see also* Huie Decl. ¶ 14; Riep-Dice Decl. Ex. A-1 at 1-3 (*Vaughn* Index: Documents Withheld in Response to FOIA Request).  Defendants further explained that the documents are being withheld in full because there was no way to segregate proposed policy material from "purely factual" material in a way that would not expose the deliberative process. Huie Decl. ¶ 14; Riep-Dice Decl. ¶¶ 24, 26, 28, 30.

In contrast, Plaintiff disputed (1) Defendants' conclusion that the documents are entirely predecisional, *see* Pl's Stmt. of Mat. Facts ¶¶ 5-7; and (2) Defendants' contention that the facts are

"inextricably intertwined with policy-making processes" and that any attempt to segregate purely factual material from the predecisional, deliberative material would result in improperly exposing the deliberative process, which Exemption 5 of the FOIA is supposed to protect, *see id.* ¶ 7; Pl.'s Opp'n to Def.'s Mot. for Summary Judgment at 10-11.

Following a round of dispositive motions around these issues, this Court – on August 2, 2004 – issued a Memorandum Opinion and Order granting-in-part and denying-in-part Defendants' Motion for Summary Judgment. *See Elec. Privacy Info. Ctr. v. Transp. Sec. Admin.*, Civ. No. 03-1846 (D.D.C. Aug. 2, 2004) (memorandum and order granting-in-part and denying-in-part Defendants' initial motion for summary judgment). Specifically, the Court concluded that (1) "Defendants have met the FOIA requirement to demonstrate, through affidavits, that the withheld documents are deliberative in nature," *id.* at 9, and (2) "the actual documents are predesicional and deliberative in nature, and therefore are protected from disclosure by Exemption 5 of FOIA," *id.* at 12. However, the Court noted that

> a document that contains predecisional information on some matters but reflects an established agency policy on other matters may be covered by Exemption 5. FOIA's requirement that a federal agency provide a requestor with any reasonably segregable information covers such a scenario, permitting the agency to withhold a document as predecisional but provide information on decided matters to the extent it can be segregated from the exempted material. 5 U.S.C. § 552(b).

*Id.* at 13-14. The Court stressed that "Defendants, in their affidavits and/or *Vaughn* index, must address segregability of any non-exempt information both in terms of 'factual' information and also 'settled' decisions that were not 'predecisional' as of the date of the draft." *Id.* at 20. Upon analyzing the arguments and representations proffered, the Court concluded that "Defendants have not met this burden as established by the law of this Circuit[.]" *Id.* As such, the Court ordered that Defendants were "to conduct another segregability review and release the segregable, non-exempt

material to Plaintiff, or file another motion with this Court addressing the segregability issue, supported by affidavits and a *Vaughn* index." *Id.*

Following the Court's August 2, 2004 Memorandum Opinion, Defendants "conducted a segregability analysis of the information previously withheld pursuant to Exemption 5" and released redacted to Plaintiff PIAs dated November 7, 2002, April 17, 2003, July 29, 2003, and July 30, 2003. Pavlik Decl. ¶ 5; Defs.' Suppl. Mot. for Summ. J., Exs. 1-4 (redacted versions of documents). Defendants divided their factual representations into two spheres – (1) the Draft 2003 PIAs, and (2) the November 7, 2002 Draft PIA. *See* Defs.' Suppl. Mot. for Summ. J. at 4-6, 6-7.

With respect to the Draft 2003 PIAs, the TSA released as "factual information" the first two paragraphs of "Section 1: Overview of CAPPS II privacy management process." Pavlik Decl. ¶ 10. TSA maintains that no "information factual in nature" exists in the remainder of Section 1, or in Sections 2, 3, 4, 6, or 7. *Id.* ¶¶ 10-13. TSA also released the information in Section 8, as the contents are "a basic statement of fact" and have been released. *Id.* ¶ 17. TSA also released Section 5 of the three 2003 Draft PIAs because it constitutes "settled" agency policy. *Id.* ¶ 14.

With respect to the November 7, 2002 Draft PIA, TSA released all material in Sections II, III, and V because "they are either exact, or near exact copies of the original IRS PIA best practices guidance." *Id.* ¶ 22. TSA also released parts of Sections I and IV because they "represent the original IRS guidance and/or are factual in nature[.]" *Id.* ¶¶ 23, 25. Specifically, the factual information contained within Sections I and IV is "a listing of laws that protect passenger and airline information" and "a portion of the text pertaining to the Privacy Act." *Id.* TSA claims that the remainder of Sections I and IV, as well as all of Appendices A and B, are lacking "information

factual in nature." *Id*. ¶¶ 24, 26-28.[6]

Plaintiff continues to object to Defendants' segregability review. First, Plaintiff contends that "TSA clearly has not satisfied its burden here. As an initial matter, the redactions in the PIAs do not suggest that TSA has conducted – nor does Ms. Pavlik claim to have performed – a line-by-line segregability analysis. A general analysis of the kind TSA has conducted does not satisfy the standards delineated by this Court." Pl.'s Opp'n at 5. Second, Plaintiff argues that Defendant has wrongfully asserted that "whole sections and even pages of the 2003 draft PIAs simply contain no facts," a result that it maintains is absurd given that the sections at issue "appear from their headings to be fact-specific, such as 'Information collected for CAPPS II' and 'How the CAPPS II information will be secured.'" *Id*. at 5-6. As such, Plaintiff stresses that Defendants' Supplemental Motion for Summary Judgment must be denied, and "Defendants should be ordered to perform a line-by-line analysis of the four draft PIAs to account for the discrepancies in their representations to plaintiff and the Court." *Id*. at 6.

## II: LEGAL STANDARDS

*A.     Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

---

[6] Plaintiff contends that "[c]uriously missing from the segregability analysis is any indication of a fifth PIA-related document that was mentioned in defendants' motion for summary judgment. Def. Mot. Summ. J. at 3." Pl.'s Opp'n at 3 n.1. Plaintiff has misconstrued the facts. "There are two documents dated November 7, 2002. The text of the first document is duplicative of the second. It differs from the second in that it contains a separate two-page draft model table of contents, which is not incorporated into the body of the PIA." Defs.' Stmt. of Mat. Facts ¶ 3 & n.2; Riep-Dice Decl. ¶ 19. Accordingly, there is no document left unproduced or unexamined by Defendants according to the myriad of declarations filed with the Court.

(D.C. Cir. 1994). Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

    *B.*    *FOIA*

Congress enacted FOIA for the purpose of introducing transparency to government activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998).  Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information.  *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9).

The Court reviews an agency's refusal to disclose requested documents *de novo*.  *See* 5 U.S.C. § 552(a)(4)(B) (2000).  Generally, when summary judgment is requested in a FOIA matter, the agency bears the burden of showing that a FOIA exemption applies.  *Smith v. United States Dep't of Justice,* 251 F.3d 1047, 1050 (D.C. Cir. 2001).  To satisfy this burden, the agency may provide a plaintiff "with a *Vaughn* index, which must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance."  *Johnson v. Executive Office for United States Attorneys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  In addition, the

agency's affidavits or declarations must describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search. *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Moreover, the agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Cent. Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Any non-exempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby v. United States Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). In addition, district courts are required to consider segregability issues even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). Courts must "accord substantial weight" to an agency's affidavit regarding FOIA exemptions. 5 U.S.C. § 552(a)(4)(B) (2004).

In opposing a motion for summary judgment, a plaintiff must offer more than conclusory statements. *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham*, 813 F.2d at 1241). Indeed, a plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all non-exempt material in the requested documents. *See Perry-*

*Torres v. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 53 (D.D.C. 2004) (citing *Piper & Marbury, LLP v. United States Postal Serv.*, Civ. No. 99-2383, 2001 WL 214217, at *2 (D.D.C. Mar. 6, 2001)).

### III: DISCUSSION

FOIA requires that the agency provide the requestor all information that is not exempt from disclosure and is "reasonably segregable." 5 U.S.C. § 552(b) (2000). Importantly, "[t]he focus of FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc.*, 566 F.2d at 260; *see also Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993). Therefore, any non-exempt portions must be disclosed unless they are "intrinsically intertwined with exempt portions." *Id*. "The 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Ctr. for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C. Cir. 1984). The agency bears the burden of demonstrating that withheld documents contain no reasonably segregable factual information. *See id.*; *see also Army Times Pub. Co. v. Dep't of Air Force*, 998 F.2d 1067, 1068 (D.C. Cir. 1993).

In the absence of an *in camera* review, a federal agency demonstrates its due diligence in conducting a segregability analysis through the submission of affidavits and a *Vaughn* index. *See Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998). To show that all "reasonably segregable" material has been released, the agency "must provide a detailed justification for its non-segregability . . . ." *Johnson*, 310 F.3d at 776 (internal quotation omitted); *see also Mead Data Cent., Inc.*, 566 F.2d at 254 n.28 (the agency must "describe the factual content of the documents and disclose it or provide an adequate justification for concluding that it is not reasonably segregable

from the exempt portions of the documents"). The explanation must include a specific finding for each document withheld. *See Perry-Torres*, 404 F. Supp. 2d at 145; *Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F. Supp. 2d 295, 302 (D.D.C. 1999) ("[T]he Defendant shall not offer one finding for *all* documents.") (emphasis in original). The agency's segregability representations must constitute "a more detailed justification" than merely "conclusory" statements stating that there is no segregable information. *Mead Data Cent., Inc.*, 566 F.2d at 261. "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Id*. This Circuit has made clear that potential segregability of material is determined by an assessment of both the "intelligibility" of factual material after it is separated from deliberative material, as well as "the extent of the burden in 'editing' or 'segregating' the nonexempt material." *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 322 n.16 (D.C. Cir. 1982). However, the agency must not provide a justification that would "compromise the secret nature of potentially exempt information." *Mead Data Cent., Inc.*, 566 F.2d at 261. In the final analysis, the Court "ha[s] an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pac. Policing Agreement*, 177 F.3d at 1028.

During the initial summary judgment phase of this litigation, Defendants' submitted declarations provided only general, conclusory language regarding segregability. For example, Ms. Riep-Dice attested that:

> to the extent that the information in the draft is factual, the facts reflect the subjective editorial judgment of the program and reviewing offices by their very selection. The confirmation of the selection of certain facts for the readers' attention reflects the judgment of these offices as to their relative importance. As such, there is no reasonably segregable information because the manner of selecting or presenting the facts would expose the deliberative process and is inextricably intertwined with the deliberative materials.

Riep-Dice Decl. ¶ 30; *see also* ¶¶ 23, 26, 28; Huie Decl. ¶ 14 ("Because the disclosure of any facts in the drafts would reveal judgments made by staff, there is no segregable factual information that could be released without revealing protected predecisional and deliberative information at the expense of the decision-making process."). The Court rejected this segregability review due to its inadequacy under this Circuit's precedent, noting that

> [i]f this stated rationale, without further detail or explanation, could be the sole justification for non-segregability, the segregability requirement of FOIA would be gutted. Any time a fact is inserted into any document, someone exercises "subjective editorial judgment." This Circuit has expressly provided that such conclusory language is insufficient to justify a finding of non-segregability. *Mead Data Cent., Inc.*, 566 F.2d at 261.

*See Elec. Privacy Info. Ctr. v. Transp. Sec. Admin.*, Civ. No. 03-1846, at 19 (D.D.C. Aug. 2, 2004) (memorandum and order granting-in-part and denying-in-part Defendants' initial motion for summary judgment).

Upon the issuance of this Court's August 2, 2005 Memorandum Opinion, Defendants conducted another segregability review. *See* Pavlik Decl. ¶ 5. In contrast to their previous segregability review, wherein Defendants concluded that no portion of any of the five (5) drafts could be released, Defendants second review yielded a fair number of sections, or portions thereof, of the five Draft PIAs for release to Plaintiff. *See id.* ¶¶ 10-14, 17, 22-28. In contrast to the previous Riep-Dice and Huie Declarations, Ms. Pavlik's Declaration contains a much more detailed explanation, over twelve (12) pages and twenty-eight (28) paragraph, as to why certain portions should be withheld as predecisional, deliberative, and nonsegregable pursuant to Exemption Five. *See, e.g., id.* ¶¶ 15-16. Despite this relative progress, Plaintiff continues to object to Defendants' segregability review for two reasons. First, Plaintiff contends that "the redactions in the PIAs do not suggest that TSA has conducted – nor does Ms. Pavlik claim to have performed – a line-by-line

segregability analysis." Pl.'s Opp'n at 5.  Plaintiff contends that such a failure ensures that Defendants have not satisfied the standards delineated by this Circuit.  *Id*.  Second, Plaintiff asserts that Defendants have "entirely failed to address" issues surrounding the "intelligibility" of factual material after it has separated from deliberative material, pointing out that Defendants have maintained "instead that whole sections and even pages of the 2003 draft PIAs simply contain no facts." *Id*. Plaintiffs suggest that Defendants current position "flies in the fact of the position defendants took in their motion for summary judgment, in which they claimed that '[i]n this instance, the manner of selecting or presenting the facts would expose the deliberative process and the facts are necessarily intertwined with policy-making process.'" *Id*. at 6 (quoting Defs.' Mot. for Summ. J. at 13).  Plaintiffs note that "[n]ow defendants maintain that the factual material in the PIAs comprises only a few isolated blocks of text, while no facts exit at all elsewhere in the PIAs – inextricable or otherwise." *Id*.  As such, Plaintiffs argue that Defendants' segregability review is once again flawed and inadequate.  The Court shall review each contention by Plaintiff in turn.

     First, with respect to Plaintiff's "line-by-line" segregability analysis argument, the Court notes that this Circuit has not specifically held that an agency must conduct an "line-by-line" analysis, or that accompanying affidavits must state as such.  While Plaintiff cites to the D.C. Circuit's decision in *Johnson v. Executive Office for United States Attorneys* as having established the "line-by-line" analysis and affidavit requirement, a reading of *Johnson* reveals that the D.C. Circuit simply reaffirmed the traditional, more flexible *Mead Data Central* requirement that "the agency must provide a 'detailed justification' for its non-segregability." *See Johnson*, 310 F.2d at 776 (quoting *Mead Data Cent., Inc.*, 566 F.2d at 261).  However, the *Johnson* court did note that one of the agency's declarants, in her statement, represented that she "personally conducted a line-by-line review of each document withheld in full and determined that 'no documents contained

releasable information which could be reasonable segregated from nonreleasable portions.'" *Id*. Based on "[t]he combination of the *Vaughn* index and the affidavits" of the agency's two declarants, the court determined that the information provided was "sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated." *Id*. (citing *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996)). Therefore, a plain reading of *Johnson* indicates that the D.C. Circuit considered a declarant's representation that a "line-by-line" review was conducted to be a persuasive factor, but by no means determinative or required. *But see Perry-Torres*, 404 F. Supp. 2d at 144 (upon a reading *Johnson*, concluding that "[a]t a minimum, the explanation should state that a line-by-line analysis of each document was conducted and that it was determined that no information can be reasonably segregated").

      Here, it is undisputed that Ms. Pavlik's Declaration does not actually contain an explicit representation that she conducted a line-by-line segregability review. However, as explained, such a representation is neither necessary nor dispositive. For instance, Judge John Bates, in *Peter S. Herrick's Customs and Int'l Trade Newsletter v. U.S. Customs & Border Prot.*, Civ. No. 04-0377, 2005 WL 3274073 (D.D.C. Sept. 22, 2005), determined that an affidavit wherein the declarant stated that the document in question "has been reviewed on a line-by-line basis and all segregable portions have been released" was inadequate. *Id*. at *3. Instead, Judge Bates reasoned that the agency must show – with "reasonable specificity" – under the traditional analysis that further segregation cannot be done. *Id*. Similar to Judge Bates, this Court will look to a variety of factors to determine if Defendants' segregability justifications were sufficiently detailed and reasonable, rather than requiring a specific checklist of form language.

Moreover, notwithstanding the lack of an explicit representation that a "line-by-line" review was conducted by Ms. Pavlik, it is evident from the actual documents produced that Ms. Pavlik did conduct a line-by-line analysis of the records in order to describe the records section-by-section, as well as to parse out the segregable/releasable information.  For example, in the 2003 PIAs, single sentences that did not contain factual information but did contain predecisional policy suggestions were removed within larger sections that were produced.  *See* Defs.' Suppl. Mot. for Summ. J., Exs. 1-3 at § 8 ("System of Records").  In addition, in the 2002 PIA, single sentences that contained recommendations regarding proposed privacy principles, policies, and procedures that were never adopted by the agency were also removed from the text in sections where other information was released.  *See id.*, Ex. 4 at 4, 11.  As such, ordering yet another review in order to obtain an explicit representation from Ms. Pavlik that a "line-by-line" analysis was conducted would be redundant. Indeed, taking Plaintiff's request to its logical conclusion, it would appear that Plaintiff is suggesting that Defendants present it with a line-by-line description of all material withheld.  Such a step is not required under existing law, and given the deliberative, predecisional nature of the withheld information, such a line-by-line description would effectively disclose the exempt material. *See Johnson*, 310 F.3d at 776 ("the agency is not required to provide so much detail that the exempt material would be effectively disclosed") (citing *Mead Data Cent., Inc.*, 56 F.2d at 261).

With respect to Plaintiff's second contention, that Defendants' production is inconsistent with their prior segregability argument, the Court finds Plaintiff's assertion to be without merit.  In their initial Motion for Summary Judgment, Defendants never argued that any particular facts in the PIAs were inextricably intertwined with the deliberative proposals therein.  Rather, Defendants simply made the general policy argument that, by its very nature, the inclusion of facts in its draft PIAs reflects the subjective editorial judgment of the program officer and other agency employees,

and that the very selection of a fact for its inclusion in these documents reflects judgments concerning its relative importance and is inextricably intertwined with deliberative communications or are deliberative facts. *See* Defs.' Mot. for Summ. J. at 14; Defs.' Reply in Supp. of Defs.' Mot. for Summ. J. at 5. The Court rejected such an assertion. *See Elec. Privacy Info. Ctr. v. Transp. Sec. Admin.*, Civ. No. 03-1846, at 19 (D.D.C. Aug. 2, 2004) (memorandum and order granting-in-part and denying-in-part Defendant's initial motion for summary judgment). As such, Defendants suggestion now that any non-produced factual information is inextricably intertwined with the deliberative proposals in the Draft PIAs is in no way contradictory to its prior representations. Indeed, while Plaintiff now complains that relatively little factual information was released following the re-review, Defendants – during the previous stage – predicted such a result, noting that:

> [a]s a threshold matter, it should be noted that there is little factual material in the draft PIAs. The draft PIAs reflect Government deliberations concerning policy matters; namely, budget policy and CAPPS II program policy. By their very nature, those policy deliberations were not fact-based. Instead, those policy deliberations involved opinions and recommendations about policy matters. Hence, these draft PIAs reflect, and consist of, opinions and recommendations about the contents of policy.

Defs.' Reply in Supp. of Defs.' Mot. for Summ. J. at 5. Besides Plaintiff's expression of unfounded incredulity in the amount of information that Defendants have released from the Draft PIAs, Plaintiff has offered little else to challenge the sufficiency of Defendants' segregability analysis, or their production. Given the detail involved in Ms. Pavlik's Declaration and the presumption of good faith to which she is entitled, Plaintiff's speculation is simply insufficient to require yet another re-review of the Draft PIAs.

Ultimately, upon a review of the record in this case, Ms. Pavlik's Declaration, and the portions of the Draft PIAs that were ultimately released, the Court finds that Defendant has met its

burden under FOIA to show that it has provided all "'reasonably segregable' facts from exempt portions of the record," or that "no such segregable information exists." *Army Times Pub. Co.*, 998 F.2d at 1071. Ms. Pavlik's twelve (12) page, twenty-eight (28) paragraph Declaration as to why some sections, or portions thereof, were withheld is quite specific, but not so specific as to reveal the actual withheld deliberative, predecisional information protected pursuant to Exemption Five. *See, e.g.*, Pavlik Decl. ¶¶ 10-16, 22, 24, 26-28. Ms. Pavlik's Declaration shows with "reasonable specificity" why a document cannot be further segregated, and a review of her handiwork reveals that her analysis was extensive, reasonable, detailed and line-by-line, though she did not represent as such. *Compare with Mead Data Cent., Inc.*, 566 F.2d at 260 (affidavit insufficient because it merely stated that "there were no factual portions . . . [of the documents] . . . which could be reasonably segregated"); *Dorsett v. Dep't of Treasury*, 307 F. Supp. 2d 28, 40-41 (D.D.C. 2004) (affidavit insufficient because simply stated that agency released all segregable material to plaintiff and further efforts at segregation would provide little information or would be unduly burdensome). Defendants withholdings are properly set forth pursuant to Exemption Five, as previously determined, and Defendants undertaking was clearly adequate, producing a significant release of factual information to Plaintiff.

### IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's Supplemental Motion for Summary Judgment. An Order accompanies this Memorandum Opinion.

Date:   March 12, 2006

                                          */s/*
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge